UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SULTON B. WILLIAMS, SR.,

    Plaintiff,

v.                              CAUSE NO. 3:21-CV-914 DRL-MGG

D. JOHNSON *et al.*,

    Defendants.

## OPINION AND ORDER

Sulton B. Williams, Sr., a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

After being held in a holding cell for five days, on or about December 17, 2020, Mr. Williams was brought from his cell at the Marshall County Jail to be showered and "dressed out." ECF 1 at 2. When he finished showering, Officer Crawford and Officer D. Johnson ordered Mr. Williams to run his fingers through his hair and mouth, then bend over and cough as part of a body search. He was told that he was not coughing hard enough, so he had to repeat this step nine times. Mr. Williams believes this was "excessive" in light of the fact that Officer Crawford is an "open homosexual." *Id*. He has

sued Officer D. Johnson, Officer Crawford, and the Marshall County Jail for monetary damages.[1]

A person alleging a violation of a federal right may bring a civil action under 42 U.S.C. § 1983 to remedy that violation. That said, § 1983 has limits on the types of violations it covers and on the people or entities that may be sued. To begin, Mr. Williams cannot sue the Marshall County Jail because it is a building. It is not a suable entity. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

With regard to his claims against the individual officers, inmates, including both convicted prisoners and pretrial detainees "maintain a privacy interest, although diminished, in their bodies" under the Fourth Amendment. *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). However, security and safety concerns must be always considered.

> [P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.

*Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Fourth Amendment recognizes the interplay between the inmate's privacy interest and institutional concerns, and "thus protects prisoners from searches that may be related to or serve some institutional objective, but where guards nevertheless perform the searches in an

---

[1] He also requests that they be ordered "to not do this to anyone else." ECF 1 at 4.

unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Id.* at 781.

When reviewing these types of claims, courts must evaluate the reasonableness of the search and afford prison administrators wide-ranging deference on matters of policy as it relates to the need to "preserve internal order and discipline and to maintain institutional security." *Id.* at 783 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.* The following situations have been recognized as reasonable because the level of intrusion did not outweigh the purported justification— conducting thorough searches as part of the intake process, visual body cavity searches of pretrial detainees after contact visits, incidental observations of undressed inmates, visual body cavity searches of prisoners returning from work, and visual body cavity searches every time prisoner left or returned to maximum security unit. *Id.* at 783–84 (collecting cases). In general, courts must consider whether the searches were unreasonable in light of (1) the scope of the intrusion, (2) the manner in which it was performed, (3) the justification for it, and (4) the place where it occurred. *Id.* at 784 (quoting *Bell*, 414 U.S. at 559).

Here, Mr. Williams alleges he was ordered to bend over and cough, while already undressed after showering, as part of a visual body cavity search. He does not allege the officers physically touched him in any way, nor does he allege the visual search lasted an inordinate amount of time. Although he alleges he was ordered to cough nine times

3

during the search, there is no suggestion the additional coughing was ordered for any other purpose than to execute the search thoroughly. For example, Mr. Williams does not allege he was subjected to any "ribald comments," inappropriate explicit gestures, or sexually provocative acts. *See, e.g., Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (finding sufficiently stated Eighth Amendment claim where those things had been alleged). In fact, Mr. Williams admits he was told it was because he wasn't coughing hard enough, a detail Mr. Williams does not allege he disputed at the time of the search and does not dispute now. Mr. Williams does state that Officer Crawford is an "open homosexual," but he does not tie this allegation to any facts that would plausibly suggest this had any bearing on the scope or manner of the search. *See e.g. Calhoun*, 319 F.3d at 939 (strip search of male prisoner in front of female officers does not automatically violate the Constitution if conducted for a legitimate penological purpose). As for the justification, Mr. Williams alleges he was being searched after spending five days in a holding cell so that he could be "dressed out." The court assumes this means Mr. Williams was being readied for transfer to the general population with the rest of the prisoners or being transported to some kind of court hearing. Either way, a visual body cavity search would not be atypical under those circumstances in order to preserve institutional safety, especially because he does not allege he was previously searched while in the holding cell. *See, e.g., Florence v. Bd. of Chosen Freeholders of the Cty. of Burlington*, 566 U.S. 318, 324, 334 (2012) (it is reasonable for correctional officials to conduct an effective search before an inmate is admitted to the general population by visually inspecting their "ears, nose, mouth, hair, scalp, fingers, hands, arms, armpits, and other body openings," including

4

requiring that at least some detainees "lift their genitals or cough in a squatting position"). Finally, there is no indication the search was performed in front of other inmates or in public; by all accounts, during the search it was only Mr. Williams and the two officers in an area near the showers.

Accordingly, based on the sparse facts presented in the complaint as outlined above, it is not plausible to infer the search was unreasonable. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

This complaint does not state a claim for which relief can be granted. Nevertheless, Mr. Williams may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Sulton B. Williams, Sr., until **January 12, 2022**, to file an amended complaint; and

(2) CAUTIONS Sulton B. Williams, Sr., if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

December 10, 2021         *s/ Damon R. Leichty*
                          Judge, United States District Court